[No. C049472. Third Dist. Aug. 1, 2006.]

THOMAS WITTE, Plaintiff and Appellant, v.
JAMES KAUFMAN et al., Defendants and Respondents.

[CERTIFIED FOR PARTIAL PUBLICATION*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II, III, IV, V, VII, and VIII of the Discussion.

## COUNSEL

Thomas M. Witte, in pro. per., for Plaintiff and Appellant.

Knox, Lemmon and Anapolsky, Thomas S. Knox and Glen C. Hansen for Defendant and Respondent Knox, Lemmon & Anapolsky.

John E. Stefanki; and James J. Kaufman for Defendant and Respondent James Kaufman.

## OPINION

**HULL, J.**—Plaintiff appeals from several orders of the trial court granting defendants' special motions to strike under the anti-SLAPP statute (strategic lawsuit against public participation) (Code Civ. Proc., § 425.16; further undesignated section references are to the Code of Civil Procedure) and awarding defendants attorney fees. We conclude the court properly granted the anti-SLAPP motions but erred in the award of attorney fees. We reverse in part and remand for reconsideration of the motions for attorney fees.

### FACTS AND PROCEEDINGS

Marven Stroh hired the law firm of Knox, Lemmon & Anapolsky (KLA) to represent him in a lawsuit against his brother, Douglas Stroh, for dissolution of their business partnership. On August 31, 2001, KLA filed a complaint on

behalf of Marven Stroh against Douglas Stroh in Sacramento County Superior Court (*Stroh v. Stroh* No. 01AS05353). Douglas Stroh hired attorney James Kaufman to represent him in the action.

In April 2003, KLA withdrew as attorney of record for Marven Stroh due to nonpayment of fees. On April 18, 2003, KLA filed suit against Marven Stroh in Sacramento County Superior Court (*KLA v. Stroh*, No. 03AS02197), seeking unpaid legal fees of $46,849.08. Marven Stroh hired plaintiff Thomas Witte to represent him in both *KLA v. Stroh* and *Stroh v. Stroh*. On June 2, 2003, plaintiff filed an answer and cross-complaint on behalf of Marven Stroh in *KLA v. Stroh*. On June 4, 2003, KLA obtained a prejudgment writ of attachment on several assets of the Stroh brothers partnership, including the Cozy Villa Mobile Home Park (Cozy Villa).

Trial in *Stroh v. Stroh* commenced on October 7, 2003. On February 4, 2004, Judge Steven Rodda issued a tentative decision directing that the partnership assets be sold and the proceeds divided between the Stroh brothers. James Sullivan of Sullivan Group Commercial Real Estate was assigned to handle the sale of Cozy Villa. An interlocutory judgment to this effect was entered on March 30, 2004.

On May 18, 2004, the Stroh brothers partnership entered into an agreement to sell Cozy Villa to Frans Roodenburg. Escrow for the sale was scheduled to close on June 16, 2004.

On June 2, 2004, *KLA v. Stroh* was arbitrated before Robert Biegler. On June 8, 2004, Biegler issued a decision awarding KLA $39,527.47 on its complaint and awarding Marven Stroh nothing on his cross-complaint. On June 10, 2004, plaintiff informed Marven Stroh of the arbitration award.

On June 11, 2004, KLA and plaintiff signed an agreement providing for the release of KLA's lien on Cozy Villa and the deposit of $51,846.14 of the proceeds from the sale of Cozy Villa in a trust account on behalf of KLA, plaintiff and Marven Stroh to be retained until *KLA v. Stroh* was resolved.

Also on June 11, Marven Stroh informed plaintiff he wanted to accept the arbitration award and directed him to contact KLA and Sullivan to facilitate settlement of the matter in order for the sale of Cozy Villa to close as scheduled. Plaintiff refused to comply, explaining that he believed he could negotiate a reduction of the arbitration award. Stroh insisted that plaintiff settle the matter for the amount of the award. When plaintiff again refused, Stroh informed him he was fired.

Later that day, Marven Stroh faxed plaintiff a note offering to pay him $15,000 for his services on condition that he obtain KLA's agreement to the

arbitration award. The note also complained about the quality of plaintiff's services and threatened that, if plaintiff did not accept the $15,000, Stroh would obtain another attorney to litigate the matter. In closing, Stroh stated: "Take my offer of $15,000, get [KLA] to agree, and our attorney-client relationship is terminated, whether you agree or not."

By June 14, 2004, Marven Stroh had heard nothing more from plaintiff. He contacted Sullivan and asked him to inform KLA that Stroh was willing to pay the amount of the arbitration award in order to close escrow on the sale of Cozy Villa. Sullivan called KLA and spoke with Attorney Glen Hansen. Sullivan told Hansen he was representing Marven Stroh in the sale of Cozy Villa and that Stroh requested that KLA accept the arbitration award. Hansen informed Sullivan he could not deal with Stroh or Sullivan directly because plaintiff represented Stroh.

Sullivan informed Stroh that KLA would not deal with him directly because he was represented by counsel. Stroh faxed plaintiff a note stating: "This fax is your notification that I am terminating your services as my attorney as-of June 14, 2004. [¶] Please prepare a substitution of attorney right away so that close of Cozy Villa escrow will not be delayed. [¶] I would like to pick-up my files on Wednesday afternoon, June 16, 2004. [¶] Please confirm and [*sic*] the time I can pick-up the files."

Also on June 14, Stroh faxed KLA a note explaining that he had terminated plaintiff as his attorney and was representing himself. Stroh informed KLA he was willing to accept the arbitration award and requested an immediate response in order to facilitate the property sale by June 16. Stroh likewise informed Kaufman that he had fired plaintiff in connection with *Stroh v. Stroh.*

The next day, June 15, 2004, Stroh spoke with John Lemmon of KLA and informed Lemmon that he had fired plaintiff. Lemmon prepared a substitution of attorney form for Stroh and informed Stroh he needed plaintiff's signature on the form before Stroh could dismiss his cross-complaint against KLA.

That same day, plaintiff sent Marven Stroh a letter stating: "I do not consent to my substituting out of either case that I am the attorney of record for you. I do not believe that [KLA] can communicate with you directly as long as I am attorney of record, since it would be in violation of the Rules of Professional Conduct." Plaintiff explained how Stroh's direct contact with KLA had jeopardized plaintiff's strategy to negotiate a reduction of the arbitration award. Plaintiff further asserted that he is entitled to attorney fees from the settlement proceeds and demanded $6,159.34. Plaintiff stated: "I have prepared a lien for at least that amount and will demand payment of that amount from the proceeds from the sale of Cozy Villa."

The following day, Marven Stroh sent plaintiff a note indicating the attorney-client relationship had ended effective June 11, 2004, and requesting that plaintiff send him a substitution of attorney form and contact him immediately in order to arrange for the transfer of files.

Marven Stroh entered into a settlement agreement with KLA effective June 15, 2004. The agreement provided for Stroh to pay KLA $39,527.47 on or before June 17, 2004, and for KLA and Stroh to dismiss their respective complaint and cross-complaint.

Escrow on the sale of Cozy Villa closed on June 16 as scheduled. KLA received a check from Stroh in the amount of $39,527.47.

On July 8, 2004, KLA received a pleading entitled "Rejection of Arbitrator's Award and Request for Trial De Novo" signed by plaintiff on behalf of Marven Stroh. Marven Stroh had not authorized plaintiff to reject the arbitration award or request trial de novo.

On July 13, 2004, Marven Stroh spoke with John Lemmon about plaintiff's refusal to sign a substitution of attorney form or release Stroh's files. He asked Lemmon to contact plaintiff and convince him to comply. Later that day, Lemmon called plaintiff and left a message asking him to sign the substitution form. Plaintiff never returned the call. On August 31, 2004, plaintiff signed the substitution of attorney form.

On September 27, 2004, plaintiff filed this action against Marven Stroh, Kaufman and KLA. The first and second causes of action allege breach of contract and fraud by Stroh. The third cause of action alleges interference with contract by Kaufman, and the fourth cause of action alleges interference with contract by KLA. In the third and fourth causes of action, plaintiff alleges Kaufman and KLA interfered with plaintiff's contract with Stroh by communicating with Stroh while plaintiff still represented him and by advising Stroh that he did not have to pay plaintiff from the proceeds of the sale of partnership assets.

On October 28, 2004, KLA and Kaufman filed special motions to strike the third and fourth causes of action under section 425.16. The trial court granted the motions, concluding plaintiff failed to establish a probability of prevailing on the merits against either defendant. The court also awarded each defendant attorney fees, the amounts to be determined by subsequent motion. The court thereafter awarded Kaufman attorney fees and costs in the amount of $7,160 and awarded KLA attorney fees and costs in the amount of $13,665.

On February 8, 2005, plaintiff filed a motion for new trial, which the trial court denied on March 3, 2005.

Plaintiff appeals the orders granting defendants' special motions to strike and the subsequent orders awarding attorney fees.

Discussion

I–V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VI

*Attorney Fees*

Section 425.16, subdivision (c), provides for an award of attorney fees to a prevailing defendant on an anti-SLAPP motion to strike. The trial court awarded Kaufman attorney fees and costs in the amount of $7,160 and awarded KLA attorney fees and costs of $13,665. Plaintiff contends neither defendant is entitled to attorney fees, because they represented themselves in the litigation and, therefore, did not incur attorney fees. We agree in part.

In *Trope v. Katz* (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259] (*Trope*), the state high court concluded a law firm that represented itself in litigation against its client for breach of contract was not entitled to attorney fees. Although the contract between the parties contained a provision for attorney fees, and Civil Code section 1717 permits the recovery of reasonable attorney fees incurred to enforce a contract that contains an attorney fees clause, the court concluded the law firm had not incurred attorney fees in representing itself. (*Trope, supra,* at p. 292.) The court explained the reasonable and ordinary meaning of "incur" is to become liable for or obligated to pay and the normal meaning of attorney fees is the consideration a litigant becomes liable to pay for legal representation. (*Id.* at p. 280.) The court pointed out that case law prior to the enactment of Civil Code section 1717 interpreted "reasonable attorney's fees" not to include fees for time spent by an attorney representing himself or herself. (*Trope, supra,* at pp. 280–282.) Finally, the court explained the Legislature did not intend to allow compensation to nonlawyers for the time they spend litigating a case on their own behalf, and there is no support in the language or legislative history of Civil Code section 1717 for treating lawyers any differently. (*Trope, supra,* at pp. 284–285.)

Plaintiff cites *Soukup v. Stock*[†] (Cal.App.) in support of his contention that defendants are not entitled to attorney fees. In that case, the Court of Appeal

---

[*]See footnote, *ante,* page 1201.

[†]Reporter's Note: For Supreme Court opinion, see 39 Cal.4th 260.

concluded an attorney who represents himself as a defendant in a SLAPP suit is not entitled to attorney fees for a successful motion to strike. However, long before plaintiff filed his opening brief in this appeal, the Supreme Court granted review in that case, rendering it no longer citable authority. (Oct. 20, 2004, S126864; Cal. Rules of Court, rules 976(d)(1), 977.) We shall revisit plaintiff's violation of the Rules of Court in connection with defendants' request for sanctions.

At least one other Court of Appeal decision has recognized that an attorney litigating an anti-SLAPP motion on his own behalf is not entitled to attorney fees. In *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510 [37 Cal.Rptr.3d 381], the court indicated the definition of attorney fees in Civil Code section 1717 applies as well to Code of Civil Procedure section 425.16, subdivision (c). According to the court: "Where an attorney-client relationship exists, the courts uniformly allow for the recovery of attorney fees under Civil Code section 1717. [Citations.] [¶] Cases that have allowed the recovery of attorney fees under the anti-SLAPP statute are similarly marked by the existence of an attorney-client relationship. [Citations.] [¶] This decisional authority and the plain language of section 425.16, subdivision (c) supports the conclusion that the commonly understood definition of attorney fees [as determined in *Trope*] applies with equal force to section 425.16 and a prevailing defendant is entitled to recover attorney fees if represented by counsel." (*Ramona Unified School Dist., supra,* 135 Cal.App.4th at p. 524.)

Defendants contend an award of attorney fees under section 425.16, subdivision (c), is more akin to an award of sanctions under section 128.5 than an award of attorney fees under Civil Code section 1717. They cite *Abandonato v. Coldren* (1995) 41 Cal.App.4th 264 [48 Cal.Rptr.2d 429] (*Abandonato*), in which the Court of Appeal affirmed an award of attorney fees as sanctions under Code of Civil Procedure section 128.5 to an attorney who represented himself against a frivolous lawsuit. The court explained that, unlike awards of attorney fees under Civil Code section 1717, awards of sanctions "are not routine and are not necessarily related to the size of the recovery or the amount of time billed by the attorney." (41 Cal.App.4th at p. 268.) Sanctions may also be awarded to both attorney and nonattorney pro se litigants. (*Id.* at p. 269.) Finally, the court noted that awarding sanctions to a self-represented attorney will further the intent of Code of Civil Procedure section 128.5 to weed out meritless claims and punish frivolous or delaying conduct. (41 Cal.App.4th at p. 269.)

KLA also cites *Laborde v. Aronson* (2001) 92 Cal.App.4th 459 [112 Cal.Rptr.2d 119] (*Laborde*), where the court relied in part on *Abandonato* to conclude an attorney litigant is entitled to an award of attorney fees under

section 128.7. Section 128.7, subdivision (c), permits an award of sanctions against any attorney or unrepresented party who falsely certifies that a filed motion or similar paper is not presented for an improper purpose, the legal contentions are warranted, and the factual contentions are supported by the evidence. The court concluded that to deny an award of sanctions to a self-represented litigant, including an attorney, would create an artificial category of litigants who would not be adequately protected from the opponent's bad faith tactics. (*Laborde v. Aronson, supra,* at p. 469.)

■ *Abandonato* and *Laborde* are inapposite. An award of sanctions is markedly different from an award of attorney fees under section 425.16. Like a punitive damages award in civil litigation, an award of sanctions is intended to punish a party for bad faith conduct, not to compensate or reward the opposing party. Section 425.16, subdivision (c), on the other hand, is intended to compensate the SLAPP defendant for attorney fees incurred in bringing a motion to strike, not to punish the SLAPP plaintiff. Like Civil Code section 1717, an award under Code of Civil Procedure section 425.16, subdivision (c), is limited to costs and attorney fees, whereas sanctions may cover any expenses incurred. In *Trope,* the high court was concerned with treating self-represented attorneys more favorably than other self-represented parties. The same concern applies to section 425.16, subdivision (c), but not sections 128.5 and 128.7, under which both an attorney litigant and a nonattorney litigant may obtain sanctions.

■ Defendants argue an award of attorney fees under section 425.16, subdivision (c), like an award of sanctions, is not "routine." We disagree. Section 425.16, subdivision (c), says a prevailing defendant on an anti-SLAPP motion "shall be entitled to recover his or her attorney's fees and costs." In other words, in all cases where a SLAPP defendant prevails, an award of costs and attorney fees is mandatory, i.e., routine. (See *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1141–1142 [104 Cal.Rptr.2d 377, 17 P.3d 735].) It is only an award of costs and attorney fees to a plaintiff who prevails on an anti-SLAPP motion that is not routine. Such an award, like an award of sanctions, is allowed only where the court concludes the anti-SLAPP motion was frivolous or intended to cause unnecessary delay. (§ 425.16, subd. (c).)

Defendants argue one purpose of section 425.16, subdivision (c), is to limit the cost of defending SLAPP suits, and prohibiting an award of attorney fees to an attorney who represents himself in an effort to keep costs down would not serve that purpose. However, the same may be said for a nonattorney litigant, yet such party could not recover for lost time. Furthermore, to say that one purpose of section 425.16, subdivision (c), is to limit expenses is not to say that the purpose is to eliminate expenses altogether. A reduction in expenses comes primarily from the introduction of an expedited procedure, not from the award of attorney fees to a prevailing defendant.

KLA contends it is nevertheless entitled to attorney fees because it is not appearing in this action in propria persona. Rather, according to KLA, it is being represented by three of the firm's attorneys. We are not persuaded. The only way KLA could possibly appear in this action is through one or more of its attorneys, or through outside counsel. By KLA's theory, it could never represent itself in litigation. In *Trope*, the party that was denied attorney fees under Civil Code section 1717 was a law firm that appeared through one of its attorneys.

In *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084 [95 Cal.Rptr.2d 198, 997 P.2d 511] (*PLCM Group*), the state high court permitted an award of attorney fees under Civil Code section 1717 to a corporation that appeared in the action through its in-house attorney. The court explained that none of the considerations that animated *Trope* apply in the case of in-house counsel. "There is no problem of disparate treatment; in-house attorneys, like private counsel but unlike pro se litigants, do not represent their own personal interests and are not seeking remuneration simply for lost opportunity costs that could not be recouped by a nonlawyer. A corporation represented by in-house counsel is in an agency relationship, i.e., it has hired an attorney to provide professional legal services on its behalf. Nor is there any impediment to the effective and successful prosecution of meritorious claims because of possible ethical conflict or emotional investment in the outcome. The fact that in-house counsel is employed by the corporation does not alter the fact of representation by an independent third party. Instead, the payment of a salary to in-house attorneys is analogous to hiring a private firm on a retainer." (22 Cal.4th at p. 1093.) The court could "discern no basis for discriminating between counsel working for a corporation in-house and private counsel engaged with respect to a specific matter or on retainer." (*Id.* at p. 1094.)

In *Gilbert v. Master Washer & Stamping Co.* (2001) 87 Cal.App.4th 212 [104 Cal.Rptr.2d 461] (*Gilbert*), Master Washer asserted a claim against Gilbert and Gilbert's attorney, Gernsbacher, for breach of contract and conversion of property. In the litigation, members of Gernsbacher's law firm represented him, and the trial court denied his motion for attorney fees under Civil Code section 1717. The Court of Appeal reversed. According to the appellate court, "a member of a law firm who is represented by other attorneys in the firm 'incurs' fees within the meaning of Civil Code section 1717. Either the represented attorney will experience a reduced draw from the partnership (or a reduced salary from the professional corporation) to account for the amount of time his or her partners or colleagues have specifically devoted to his or her representation, or absorb a share of the reduction in other income the firm experiences because of the time spent on the case. This is different from the 'opportunity costs' the attorney loses while he or she is personally involved in the same case, because the economic detriment is

caused not by the expenditure of his or her own time, but by other attorneys working on his or her behalf." (*Gilbert, supra*, at p. 221.)

The *Gilbert* court found the existence of an attorney-client relationship dispositive: "*Trope v. Katz*, denied fees to an attorney litigant acting in propria persona based in large part on the absence of an attorney-client relationship, because a pro se attorney litigant does not become liable to pay fees 'in exchange for legal representation.' By contrast, *PLCM Group* approved a fee award for the representation of in-house counsel because unlike an individual attorney acting in propria persona, ' "an organization is always represented by counsel. . . . and thus, there is always an attorney-client relationship." '

"There can be no question an attorney-client relationship is also present where an attorney litigant is represented by other attorneys in his or her own firm. In this case, Messrs. Beach and McGarrigle of Gernsbacher & McGarrigle, like the in-house counsel in *PLCM Group* but unlike Messrs. Trope and Trope in *Trope*, represented not their personal interests or even those of their law firm, but the separate and distinct interests of Gernsbacher himself. Beach and McGarrigle were Gernsbacher's agents, and he was the recipient of legal services performed by them on his behalf." (*Gilbert, supra*, 87 Cal.App.4th at p. 222, fns. omitted.)

Here, unlike *PLCM Group* and *Gilbert*, but like *Trope*, there is no attorney-client relationship between KLA and its individual attorneys. The individual KLA attorneys are not comparable to in-house counsel for a corporation, hired solely for the purpose of representing the corporation. The attorneys of KLA are the law firm's product. When they represent the law firm, they are representing their own interests. As such, they are comparable to a sole practitioner representing himself or herself. Where, as in *Gilbert*, an attorney is sued in his or her individual capacity and he obtains representation from other members of his or her law firm, those other members have no personal stake in the matter and may, in fact, charge for their work. Not so with a law firm that is sued in its own right and appears through various members.

Here, KLA incurred no attorney fees in bringing its motion to strike, because all the work was done by members of the firm on their own behalf. Thus, KLA is not entitled to attorney fees.

Kaufman contends he is entitled to attorney fees because he enlisted the help of outside counsel. An attorney appearing in an action on his own behalf may nevertheless retain outside counsel for assistance, and the legal expenses incurred for such outside representation may be included in an award of

attorney fees. (*Mix v. Tumanjan Development Corp.* (2002) 102 Cal.App.4th 1318, 1324–1325 [126 Cal.Rptr.2d 267].)

Kaufman contends that, from the outset, he "retained attorney John Stefanki, a separate professional corporation, for the purposes of overseeing, reviewing, and litigating this matter." Kaufman asserts "the hours recognized by the trial court are an accurate and fair representation of the amount of time that John Stefanki and those paid to assist him spent consulting, reviewing, researching, and writing in conjunction with attorney Kaufman in pursuing this matter."

Kaufman's assertions are disingenuous at best. In his motion for attorney fees, Kaufman sought fees in the amount of $6,410. This amount was later increased to $7,160 to include work done after the motion was filed. The declaration of John Stefanki submitted with the motion indicated in an attached exhibit B, listed the services rendered in support of the amount requested. Exhibit B is a billing invoice on the letterhead of James Kaufman, not John Stefanki. Without going through each entry in that invoice, we note, for example, that the bill includes one hour for attending a hearing on December 16, 2004. A quick review of the reporter's transcript shows that on December 16, 2004, plaintiff appeared on behalf of himself and Thomas Knox (of KLA) and James Kaufman appeared on behalf of the defendants. There is no indication of John Stefanki's presence. Exhibit B also includes two hours for conferring with Dave Barrett of KLA on October 18, 2004, and working on the memorandum in support of motion to strike and supporting declarations. However, the billing statement of KLA reveals that on October 18, 2004, "DSB" had a telephone conference with Kaufman, not Stefanki.

In a declaration in support of his reply memorandum, Kaufman states that he and Stefanki, "acting together as co-counsel, spent 24.25 hours in research, writing, interviewing and conferring with necessary individuals, preparing the declarations of Marven Stroh and John Stefanki, and drafting the Anti-SLAPP motion filed on October 28, 2004. The hours also include the appearance at the hearing in this matter and the preparation of the pleadings, judgment, etc." At the $250 per hour rate charged by Kaufman and Stefanki, this comes to $6,062.50. There is no attempt to differentiate the hours spent by Kaufman from those spent by Stefanki. This will have to be sorted out by the trial court.

## VII, VIII*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1201.

## DISPOSITION

The orders granting defendants' special motions to strike under the anti-SLAPP statute are affirmed. The subsequent orders granting defendants' motions for attorney fees are reversed. The case is remanded to the trial court with directions to deny KLA's motion for attorney fees and to reconsider Kaufman's motion in light of the views expressed in this opinion. Kaufman is also awarded attorney fees on appeal on the same basis as they are allowed below, the amount to be determined by the trial court. The parties shall bear their own costs on appeal.

Raye, Acting P. J., and Morrison, J., concurred.