Filed 3/25/15  Shames v. Peffer CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MICHAEL SHAMES, | D065737 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00036966-CU-DF-CTL) |
| DAVID PEFFER et al., | |
| Defendants and Respondents. | |


APPEAL from orders of the Superior Court of San Diego County, Ronald S. Prager, Judge.  Affirmed.


Michael Shames, in pro. per., for Plaintiff and Appellant.

Aguirre & Sevenson and Maria C. Severson for Defendants and Respondents.

Plaintiff Michael Shames appeals from orders awarding attorney fees to defendants David Peffer and Michael Aguirre after they prevailed in special motions to

strike brought under the anti-SLAPP statute (Code of Civ. Proc., § 425.16).[1]  Shames contends (1) Aguirre should not have been awarded attorney fees because he was represented by the law firm in which he is a partner and thus was effectively self-represented; and (2) the fee award to Peffer was improper because Peffer's anti-SLAPP motion was largely duplicative of Aguirre's, and the amount of attorney fees incurred by Peffer was not sufficiently supported by the records submitted by his attorney.  We conclude that Shames's arguments are without merit, and we accordingly affirm the orders.

## I

## FACTUAL AND PROCEDURAL BACKGROUND

Shames, who was the executive director of Utility Consumer's Action Network, was sued by Peffer in a derivative lawsuit alleging various types of misconduct by Shames.  Aguirre was Peffer's attorney of record in the derivative lawsuit.  Based on negative statements about Shames made by Peffer and Aguirre in connection with the derivative lawsuit and related disputes, Shames filed the instant lawsuit against Peffer and Aguirre alleging libel and interference with prospective economic relations.[2]

---

[1]     Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.  SLAPP is an acronym for strategic lawsuit against public participation. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109 & fn. 1.)

[2]     In designating the record for this appeal, Shames did not include the complaint that he filed against Aguirre and Peffer, although from other materials in the record it appears that the complaint included causes of action for libel and interference with prospective economic relations.

Peffer and Aguirre both filed special motions to strike the complaint under the anti-SLAPP statute (§ 425.16), arguing that Shames's complaint arose from protected activity and that Shames could not establish a probability of prevailing on his claims. Aguirre filed his anti-SLAPP motion on June 7, 2013, with a hearing set for September 6. Peffer filed his motion on June 21, with a hearing set for November 15.

In their special motions to strike, both Peffer and Aguirre were represented by the law firm, Aguirre, Morris & Severson LLP, in which Aguirre is a partner. One of the firm's partners, Maria C. Severson, performed the work on the anti-SLAPP motions, along with one of the firm's associates. As the legal issues presented by Peffer's and Aguirre's special motions to strike were the same, the content of the two motions were nearly identical, and both motions were supported by a single set of common supporting declarations.

The trial court granted Aguirre's special motion to strike on September 9, 2013, striking the causes of action for libel and interference with prospective economic relations. Shames decided not to oppose Peffer's special motion to strike, and the trial court granted Peffer's motion on November 15, also striking the causes of action for libel and interference with prospective economic relations.[3]

---

[3]     Because the complaint is not in the appellate record, we are not able to determine whether, in striking the causes of action identified in the minute orders ruling on the special motions to strike, the trial court struck all of the causes of action that Shames alleged against Aguirre and Peffer. In his appellate briefing, Shames asserts, without explaining further, that as to Peffer, the trial court struck only "three of the five cause of action" and that "two causes of action against Peffer remained."

Aguirre and Peffer both filed motions pursuant to section 425.16, subdivision (c) to recover the attorney fees and costs that they incurred as prevailing parties in their special motions to strike. Peffer sought an attorney fee award of $37,474 and $185 in costs. Aguirre sought an award of $20,765 in attorney fees and $185 in costs.

In support of both motions, Severson filed declarations that attached fee and cost charts describing the work that she and her associate performed in connection with the anti-SLAPP motions and the attorney fees motions. Severson explained that Aguirre's and Peffer's motions were both prepared in May and early June 2013, although Peffer's motion was filed two weeks after Aguirre's. Further, because of the duplicative nature of the motions, Severson chose to include $15,275 in fees incurred in performing the preliminary work of reviewing the complaint and conducting factual and legal research for the special motions to strike when compiling the list of fees sought in Peffer's fee motion, but she omitted those preliminary fees from the list of fees sought in Aguirre's fee motion.

Shames opposed the attorney fee motions. As to both Peffer and Aguirre, Shames argued that the fees claimed were excessive. In addition, as to Aguirre, Shames argued that Aguirre was a self-represented party who could not recover attorney fees because he was represented by the law firm in which he is a partner.

The trial court awarded attorney fees to Aguirre in the amount requested, i.e., $20,765 plus costs. As to Peffer, the trial court awarded attorney fees but reduced the amount of the fee award from what Peffer had requested. Explaining that Aguirre's and Peffer's moving papers for the anti-SLAPP motions were nearly identical and that

4

Shames did not oppose Peffer's anti-SLAPP motion, the trial court awarded $12,500 in fees to Peffer instead of the $37,474 in fees that he had requested.

Shames appeals from the orders awarding fees to Aguirre and Peffer.[4]

II

DISCUSSION

A. *Aguirre Was Not a Self-represented Party Barred from Recovering Attorney Fees*

We first consider Shames's contention that the trial court erred in awarding attorney fees to Aguirre because Aguirre was represented by a law firm in which he is a partner. In this context, " ' "[t]he issue of a party's entitlement to attorney's fees is a legal issue which we review de novo." ' " (*Ellis*, *supra*, 230 Cal.App.4th at p. 252.)

With certain exceptions, the anti-SLAPP statute provides for a mandatory award of attorney fees to a defendant who prevails on a special motion to strike. (§ 425.16, subd. (c)(1).) "An exception to this fee-shifting provision applies to self-represented attorneys." (*Ellis*, *supra*, 230 Cal.App.4th at p. 253.) "[A] party, whether or not he is an attorney, who is not represented by counsel and who litigates an anti-SLAPP motion on his own behalf may *not* recover attorney fees under the statute." (*Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 494, italics added.) This rule, which is based on the premise that "an 'attorney who chooses to litigate in propria persona' by that choice 'does not pay or become liable to pay consideration in exchange for legal representation,' " has

---

4     "An appeal may be taken from an order awarding attorney fees for a successful anti-SLAPP motion." (*Ellis Law Group, LLP v. Nevada City Sugar Loaf Properties, LLC* (2014) 230 Cal.App.4th 244, 250 (*Ellis*).)

also been applied in the context of other attorney fee-shifting provisions, such as Civil Code section 1717. (*Ellis*, at p. 253, citing *Trope v. Katz* (1995) 11 Cal.4th 274, 292.)

Based on the rule against recovery of attorney fees for self-represented parties, case law also holds that when a *law firm* defendant is represented in litigation by the law firm's own attorneys (or closely associated "of counsel" attorneys), the law firm is a self-represented party and thus cannot recover attorney fees. (*Soni v. Wellmike Enterprise Co. Ltd.* (2014) 224 Cal.App.4th 1477, 1490 (*Soni*); *Sands & Associates v. Juknavorian* (2012) 209 Cal.App.4th 1269, 1273; *Witte v. Kaufman* (2006) 141 Cal.App.4th 1201, 1211.)

However, the instant case is neither a situation in which Aguirre's law firm has been sued and is providing representation by its own attorneys, nor a situation in which Aguirre is acting as his own lawyer. Instead, Aguirre has been sued as an *individual*, and he has retained *other* attorneys, who happen to work in his own law firm, to represent him. The rule that applies in this case is set forth in *Gilbert v. Master Washer & Stamping Co*. (2001) 87 Cal.App.4th 212 (*Gilbert*). *Gilbert* explained that "a lawyer represented by other members of his law firm is entitled to recover reasonable attorney fees where the representation involved the lawyer's personal interests and not those of the firm." (*Id*. at p. 214.) "[W]here an attorney litigant is represented by members of his or her firm . . . , the represented attorney seeks to recover fees for work done by others on his behalf," and "it would be inequitable in the extreme to permit [a party] to recover fees incurred by outside counsel, but deny him such recovery merely because his counsel are members of the same law firm as he." (*Id*. at p. 223.) Thus, under the established rule,

6

"an attorney litigant who is represented by other attorneys in a matter involving the attorney's personal interests may recover attorney fees, *even if represented by other attorneys within [his or her own] firm*." (*Soni*, *supra*, 224 Cal.App.4th at p. 1488, italics added; see also *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 96 [rule against the recovery of attorney fees by a self-represented lawyer "does not preclude the recovery of fees for other attorneys and paralegals hired by [the lawyer] to represent him, even if they work in his law firm"].)

Shames argues that this case does not involve Aguirre's *personal* interests because the claims against Aguirre arose from his professional work as a lawyer at a law firm. We disagree. Shames has sued Aguirre personally as an individual, not as a representative of the law firm, and has not named the law firm as a defendant. Therefore, any liability against Aguirre in this case would be personal to Aguirre and involves his own financial interests, not those of the limited liability law firm in which he is a partner. Indeed, in *Gilbert*, the lawyer entitled to recover his attorney fees had been sued by his client's tenant based on *legal work* he performed for the client in a landlord-tenant dispute. (*Gilbert*, *supra*, 87 Cal.App.4th at p. 214.) Focusing on the fact that the lawyer had been sued in his personal capacity, the court concluded that an award of fees was proper because the lawyer's own *personal interests* were at stake, not those of his law firm. (*Id*. at p. 217 [the attorney represented by his law firm was "entitled to his attorney fees because he was sued personally"].) The same result applies here. Although Aguirre

7

was sued based on his representation of a client while a partner in a law firm, he was sued personally, and thus his own personal interests are at stake, not those of his law firm.[5]

We therefore conclude that there is no merit to Shames's contention that Aguirre is barred from recovering his attorney fees on the ground that he was purportedly self-represented in this litigation.

B.  *The Trial Court Did Not Abuse Its Discretion in Making the Attorney Fee Award to Peffer*

We now turn to Shames's contention that the trial court improperly awarded $12,500 in attorney fees to Peffer as the prevailing party in a special motion to strike because the fees were excessive or duplicative of the fees recovered by Aguirre or not sufficiently supported by the records submitted by Peffer.

"We review an anti-SLAPP attorney fee award under the deferential abuse of discretion standard. . . .  The trial court's fee determination ' " 'will not be disturbed unless the appellate court is convinced that it is clearly wrong.' " ' "  (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1322, citation omitted (*Christian Research*).)

---

[5]  Although the argument is not clearly set forth, Shames also appears to contend that although nominally brought against Aguirre, this lawsuit is in effect a lawsuit against Aguirre's law firm because Aguirre has not established that there is any "liability shield" that would prevent the law firm from being liable for a judgment against Aguirre. Shames appears to reason that, accordingly, this lawsuit is controlled by the cases in which a law firm is barred from recovering attorney fees because it has represented itself. The premise of Shames's argument fails.  Shames has sued Aguirre, not the law firm. Shames has identified no legal principle under which Aguirre's law firm, formed as a limited liability partnership, would be liable for a judgment against Aguirre personally. (See Corp. Code, § 16201 ["A partnership is an entity distinct from its partners."].)

8

"The amount of an attorney fee award under the anti-SLAPP statute is computed by the trial court in accordance with the familiar 'lodestar' method. . . . Under that method, the court 'tabulates the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work.' " (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 491, citation omitted.) " ' "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong' ["] — meaning that it abused its discretion.' " (*Ibid*.) "This rule applies in the context of fee awards under the anti-SLAPP statutes just as it does in the context of similar statutory fee-shifting provisions." (*Ibid*.)

Shames's first argument is that the trial court should not have awarded fees to Peffer because they were duplicative of the fees claimed by Aguirre. As Shames points out, the anti-SLAPP motions filed by Aguirre and Peffer were substantially identical and relied on common declarations. He contends that, accordingly, all of the attorney fees claimed by Peffer in connection with the anti-SLAPP motion must be duplicative of the fees awarded Aguirre, and the trial court accordingly abused its discretion in awarding any fees to Peffer. We disagree.

Shames made the same argument in opposition to Peffer's attorney fee motion, and the trial court largely accepted the argument, but drastically *reduced* Peffer's fee award. Specifically, the trial court observed that Peffer's and Aguirre's anti-SLAPP motions were nearly identical, and it reduced the fees that Peffer had claimed for his motion by

9

$24,974, from $37,474 to $12,500. "Where, as here, the trial court severely curtails the number of compensable hours in a fee award, we presume the court concluded the fee request was padded." (*Christian Research*, *supra*, 165 Cal.App.4th at p. 1325.) Shames's argument that Severson performed overlapping work on the anti-SLAPP motions might "explain why the trial court may have been correct in initially reducing the amount of fees awarded," but it does "not explain why the award must be further reduced" when "the trial court already substantially reduced the fee award." (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 787.)

Moreover, a close look at the list of fees claimed by Peffer and the list of fees claimed by Aguirre shows that in awarding only $12,500 in fees to Peffer, with a reduction of $24,974, the trial court eliminated *all* of the $15,414 that Peffer had claimed for the activities of drafting and arguing his anti-SLAPP motion.[6] The remaining award of $12,500 in fees to Peffer was sufficient to cover only some of the $15,275 in attorney fees associated with Severson's *preliminary* review, research and fact gathering for Aguirre and Peffer's anti-SLAPP motions. As made clear by Severson's declaration, the attorney fees incurred in the preliminary work on the anti-SLAPP motions were *not* included in the attorney fees claimed by Aguirre in his fee motion. Therefore, in making a reduced award of $12,500 in fees to Shames, the trial court could not have awarded any

---

6    The trial court did not award any fees associated with briefing a reply for Peffer's anti-SLAPP motion, as any such activity was encompassed in the fees for drafting and arguing the anti-SLAPP motion, which the trial court deducted from the total fee award. Therefore, there is no merit to Shames's argument that the trial court abused its discretion to the extent it awarded fees for briefing a reply to an unopposed anti-SLAPP motion.

fees that were duplicative of any of the fees awarded to Aguirre for preparing the anti-SLAPP motion.[7]

Shames also contends that the trial court erred in awarding fees to Peffer because the fee request was not supported by sufficient detail of the work performed by Severson and her associate in support of the anti-SLAPP motions.  We disagree.  "In California, an attorney need not submit contemporaneous time records in order to recover attorney fees. . . .  Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records."  (*Martino v. Denevi* (1986) 182 Cal.App.3d 553, 559, citation omitted.)  Severson's declaration, which attaches a list of the hours spent by her and her associate on specific categories of tasks in connection with the litigation of the special motion to strike, is sufficient evidence to support the trial court's award of fees.

Finally, although the argument is not clearly set forth, Shames also appears to contend that because detailed billing records were not provided, Peffer may have claimed some fees that were unrelated to the litigation of the anti-SLAPP motion.  There is no support in the record for this assertion, and we reject it.  Severson's declaration and the

[7]    Shames contends that Peffer did not need to incur any fees to file an anti-SLAPP motion because he could merely have waited until Aguirre's motion was heard, and that Aguirre's motion would have been "determinative" as to Peffer as well, making the filing of Peffer's anti-SLAPP motion purely "gratuitous."  The argument fails because (1) a defendant is statutorily required to file an anti-SLAPP motion within 60 days of being served with the complaint unless the court orders otherwise (§ 425.16, subd. (f)), and thus Peffer did not have time to wait for Aguirre's motion to be heard before filing his own motion; and (2) even if the decision on Aguirre's motion would have decided the same legal issues, Peffer still needed to file his own anti-SLAPP motion to obtain a ruling striking the claims against him.

11

attached list of fees plainly states that the fees requested in Peffer's attorney fee motion were incurred in connection with litigating the anti-SLAPP motion and the ensuing attorney fee motion.  It is Shames's burden to point to evidence that any specific fees claimed by Peffer were unrelated to the litigation of the anti-SLAPP motions (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564), and he has failed to meet that burden.

## DISPOSITION

The orders awarding attorney fees to Aguirre and Peffer as prevailing parties in their special motions to strike are affirmed.


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McDONALD, J.

12