Filed 4/8/21 (unmodified opn. attached)
<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| KEVAN HARRY GILMAN, | C066930 |
| Plaintiff and Respondent, | (Super. Ct. No. 04AS03166) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |
| LENA L. DALBY et al., | |
| Defendants and Respondents; | |
| TAMMY R. PHILLIPS et al., | |
| Claimants and Appellants; | |
| ADAM C. THIEL, | |
| Respondent. | |

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part IV of the Discussion.

1

APPEAL from a judgment of the Superior Court of Sacramento County, Shelleyanne Wai Ling Chang, Judge. Reversed in part and affirmed in part.

Charles Q. Jakob for Claimants and Appellants.

Dreyer Babich Buccola Wood Campora, Steven M. Campora and Marshall R. Way for Defendants and Respondents Lena L. Dalby et al.

Kevan Harry Gilman, in pro. per., for Plaintiff and Respondent.

Law Office of Joseph C. Maher and Joseph C. Maher II for Respondent Adam C. Thiel.

THE COURT:

It is ordered that the opinion filed herein on March 12, 2021, be modified as follows:

The last paragraph on page 20 that begins with, "Second, Appellants assert that Respondents, …" and ends on page 21, is to be modified to read:

Second, Appellants assert that Respondents, even if not notified of the lien by mail, at least had constructive notice of the lien because an electronic version of the lien was available on "the case docket through the lower court's website." But Appellants offer no facts to show that to be true. The only "evidence" they offer in support is a portion of their motion for sanctions where they argued "[t]he court file contained [Appellants'] notice of liens." But statements in motions are not evidence. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11 ["unsworn statements of counsel are not evidence"].) And regardless, whether the court's file contained the notice and whether the court's website contained the notice are two very different things.

This modification does not affect the judgment.

The petition for rehearing is denied.


BY THE COURT:


_____/s/_____
BLEASE, Acting P. J.


_____/s/_____
HULL, J.


_____/s/_____
KRAUSE, J.

Filed 3/12/21 (unmodified opinion)

CERTIFIED FOR PARTIAL PUBLICATION<sup>*</sup>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| KEVAN HARRY GILMAN, | C066930 |
| Plaintiff and Respondent, | (Super. Ct. No. 04AS03166) |
| v. | |
| LENA L. DALBY et al., | |
| Defendants and Respondents; | |
| TAMMY R. PHILLIPS et al., | |
| Claimants and Appellants; | |
| ADAM C. THIEL, | |
| Respondent. | |

---

<sup>*</sup> Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part IV of the Discussion.

1

APPEAL from a judgment of the Superior Court of Sacramento County, Shelleyanne Wai Ling Chang, Judge. Reversed in part and affirmed in part.

Charles Q. Jakob for Claimants and Appellants.

Dreyer Babich Buccola Wood Campora, Steven M. Campora and Marshall R. Way for Defendants and Respondents Lena L. Dalby et al.

Kevan Harry Gilman, in pro. per., for Plaintiff and Respondent.

Law Office of Joseph C. Maher and Joseph C. Maher II for Respondent Adam C. Thiel.

Code of Civil Procedure[1] section 708.410 allows a party who has a money judgment against another to obtain a lien on that person's right to money in a later lawsuit. In particular, it allows a "judgment creditor who has a money judgment against a judgment debtor who is a party to a pending action" to obtain a lien on "[t]he rights of such judgment debtor to money or property under any judgment subsequently procured in the action."

We consider here an uncommon application of this statute. The judgment creditors in this case obtained, per section 708.410, a lien on "[t]he rights of [the] judgment debtor to money or property under any judgment" in a certain lawsuit. In the course of that suit, the judgment debtor paid money to another party pursuant to an adverse judgment, but, following reversal of that judgment, the trial court ordered that money to be returned to the judgment debtor. We consider in this appeal whether the judgment creditors' lien attached to the money ordered returned to the judgment debtor.

Unlike the trial court, we conclude it potentially did, though we find further factual review is required to resolve the issue. Section 708.410 speaks broadly of a

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

judgment creditor's ability to obtain a lien on a judgment debtor's right "to money . . . under any judgment" in a lawsuit, and another statute that is part of the same statutory scheme defines the word "judgment" to include, relevant here, an order. Applying this definition to section 708.410, we find a judgment creditor may obtain a lien on a judgment debtor's right "to money under *any* [order]" in a lawsuit, including the type of order in our case. Because the trial court here interpreted section 708.410 differently, we reverse its decision in part and remand for reconsideration.

BACKGROUND

Kevan Harry Gilman, for reasons that are irrelevant here, sued Lena L. Dalby, her law firm, and the individual members of the firm (collectively, the Dalby Respondents) in 2004 to recover funds he believed he was owed. (*Gilman v. Dalby* (2009) 176 Cal.App.4th 606, 610.)

We first considered this matter in 2009. We considered then, among other things, the trial court's granting of the Dalby Respondents' motion for summary judgment and its ordering Gilman to pay the Dalby Respondents $17,229.27 in attorney fees and costs. Although we agreed with the trial court in part, we found the evidence insufficient to warrant the summary adjudication of one of Gilman's causes of action. We thus reversed the summary adjudication of that one cause of action and also reversed the related award of $17,229.27 in fees and costs. (*Gilman v. Dalby*, *supra*, 176 Cal.App.4th at p. 620.)

This current appeal concerns the later return of that $17,229.27 to Gilman, and it involves two new parties, Tammy R. Phillips and her eponymous law firm (collectively, Appellants), who hold outstanding money judgments against Gilman in an amount well over $17,229.27.

A month after our 2009 decision, Appellants filed a notice of lien in this case under section 708.410. Relevant here, that statute allows "[a] judgment creditor who has a money judgment against a judgment debtor who is a party to a pending action or special proceeding [to] obtain a lien under this article, to the extent required to satisfy the

3

judgment creditor's money judgment, on . . . [¶] [t]he rights of such judgment debtor to money or property under any judgment subsequently procured in the action or proceeding." (§ 708.410, subd. (a)(2).) Based on this language, Appellants alleged in their notice of lien that they were entitled to "any rights to money or property under any judgment, order, or settlement taken by GILMAN in this action."

A couple months after Appellants filed their notice of lien, Gilman filed a motion for restitution, seeking a return of the $17,229.27 he paid to the Dalby Respondents. Gilman did not notify Appellants. The trial court agreed restitution was appropriate and thus "ordered [the Dalby Respondents] to restore the $17,229.27 to [Gilman]." After the Dalby Respondents paid this amount, Gilman dismissed his case against the Dalby Respondents without prejudice.

Five months after Gilman's dismissal, Appellants filed a motion to strike the allegedly invalid dismissal and for an order of satisfaction of lien. Relying on section 708.440, Appellants contended their filed lien should have prevented Gilman from dismissing his case because, per section 708.440, judgment debtors generally may not dismiss their actions "without the written consent of the judgment creditor or authorization by order of the court." (§ 708.440, subd. (a).) Appellants then contended the court should, after vacating the dismissal, order the Dalby Respondents and Gilman to pay them the $17,229.27. Although not entirely clear, they appeared to reason that Gilman should be ordered to pay at least some of this amount because he sought restitution for himself even though he had notice of Appellants' lien. And, relying on section 708.470, they reasoned the Dalby Respondents should similarly be ordered to pay this amount, at least to the extent Gilman did not pay it, because they paid Gilman even though they too had notice of Appellants' lien. (§ 708.470, subd. (c) [a party who, "having notice of the lien," "pa[ys] an amount to the judgment debtor that was subject to the lien" may be liable to the creditor].) Appellants also asserted that Gilman should be ordered to pay for their costs of enforcement and that Gilman and his attorney, Adam C.

4

Thiel, should be sanctioned. Finally, unless they received their money, Appellants asked the court to report Gilman and Thiel to the State Bar of California.

The trial court rejected Gilman's several claims on October 27, 2010. It first questioned whether it had jurisdiction, given Gilman's previous dismissal of the action. But assuming it had jurisdiction, it rejected Appellants' claim that they had a lien on the $17,229.27. Appellants' lien, the court explained, reached only money that Gilman was entitled to receive under a "judgment." But the restitution order, the court concluded, was not a "judgment." It reasoned the order "was not based on any right to payment in the action," but only returned the parties "to the status quo." The court also rejected Appellants' request for sanctions against Gilman and Thiel and "decline[d] to report [Gilman] to the State Bar."

After the court issued its tentative decision denying Appellants' claims, but before its final order, Appellants filed a memorandum of costs seeking additional payment for the costs of enforcement. The Dalby Respondents in response filed a motion to tax costs, asserting, among other things, that Appellants were not entitled to their requested costs because they were not the prevailing parties. Appellants opposed the motion. They contended the Dalby Respondents' motion should be denied because Appellants had only sought enforcement costs from Gilman, not from the Dalby Respondents.

The trial court agreed with Appellants. Because Appellants conceded they had neither the intention nor the right to impose the costs claimed on the Dalby Respondents, the court found it unnecessary to consider the merits of the Dalby Respondents' motion. It thus denied the Dalby Respondents' motion to tax on December 16, 2010. At the close of the order, however, the court added "that no fees or costs shall be awarded against the [Dalby Respondents]"—in effect largely granting the Dalby Respondents their requested relief.

5

Appellants timely appealed.[2]

## DISCUSSION

## I

*Appellants' Requests for Judicial Notice*

Before turning to the merits, we consider Appellants' three requests for judicial notice.

We grant judicial notice for most of their submitted documents.  These include several filings from Gilman's bankruptcy proceedings (requests 1, 16, 17, 23), the California Law Revision Commission's 1982 report on several judgment lien statutes (request 2), a 2011 report from the Administrative Office of the Courts (request 4), several filings from the trial court proceedings in this case (requests 6, 18, 20), Gilman's discovery responses from another case (requests 7-9), the docket from the first appeal in this case (request 10), Appellants' renewal of their judgments against Gilman (request 14), several filings from Gilman's related suit against Appellants (request 15), and the bankruptcy court's docket (requests 16, 24).  (Evid. Code, §§ 452, subds. (c), (d), 459, subd. (a).)

We deny Appellants' remaining requests.  We deny three of their requests because Appellants fail to explain "why the matter is subject to judicial notice under Evidence Code section 451, 452, or 453."  (Cal. Rules of Court, rule 8.252 (a)(2)(C).)  That includes a receipt (request 3), two website printouts (requests 3, 5), and, according to Appellants, "Gilman['s] concession [that] Thiel was his counsel of record" (request 22).

We deny three more of their requests because they concern irrelevant matters.  These three requests are the Dalby Respondents' application for an extension of time to file their brief on appeal (request 11), the docket from Gilman's suit against one of his

---

[2]    Gilman filed for bankruptcy shortly after Appellants appealed, resulting in a six-year stay in these proceedings that ended when Gilman's bankruptcy petition was denied.

former attorneys (request 12), and part of a State Bar Court's 2015 decision that concerned Gilman (request 19). Appellants contend the Dalby Respondents' application for extension of time is relevant to show their attorney "is disorganized and busy." But although the application might show their counsel was busy in August of 2017, when the application was filed, we do not see how that is relevant to this matter. Appellants next contend the docket from Gilman's suit against his former attorney is relevant because the types of allegations Gilman made in that case tend to weaken his claims here. But even assuming that is true, we find the docket to be of little help in that regard as we cannot ascertain the particular types of allegations Gilman made in that case simply by reviewing the docket. Lastly, Appellants contend the State Bar Court's decision is relevant because "[i]t corroborates Appellants' assertion in the lower court that opportunities to report Gilman to the State Bar were commonplace" and shows "Appellants' counsel had never threatened to report Thiel to the State Bar." But even supposing opportunities to report Gilman were "commonplace," we do not see why that matters to this appeal. We also fail to understand how the State Bar Court's decision concerning Gilman shows Appellants' counsel "never threatened to report Thiel to the State Bar."

We deny two more of Appellants' requests because they seek judicial notice for an improper purpose—namely, for the truth of the matters asserted in the documents. This relates to Appellants' application to shorten time in this matter (request 11), their application to add Thiel as a respondent (request 11), and three checks from Gilman's wife to Lien Medical that were allegedly exhibits in Gilman's bankruptcy case (request 21). In seeking judicial notice of their two applications, Appellants apparently seek only to incorporate the arguments they made in those applications. And as to the checks, Appellants seek to introduce them to show Gilman's wife sent Lien Medical checks in the amount of $13,000—in other words, they are relevant for the truth of the matter asserted. But "the truth of the matters alleged in [a document] is not the proper subject of judicial

7

notice" (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1147, fn. 5), and so we deny these requests.

Finally, Appellants ask that we take judicial notice of the "absence of motions in this court showing Appellants assigned their judgments" (request 13). Without needing to take judicial notice of this matter, we acknowledge that no party has filed any motion of that sort in this appeal.

## II

### *Appellants' Motion for Lien Satisfaction*

Turning to the merits, we consider first Appellants' contention that the trial court wrongly denied their "motion for satisfaction of their liens."

Appellants' argument is based principally on sections 708.410 and 680.230, both of which are part of the Enforcement of Judgments Law (EJL; § 680.010 et seq.). Section 708.410, in relevant part, provides: "A judgment creditor who has a money judgment against a judgment debtor who is a party to a pending action or special proceeding may obtain a lien . . . on . . . [¶] [t]he rights of such judgment debtor to money or property under any judgment subsequently procured in the action or proceeding." (§ 708.410, subd. (a)(2).) Section 680.230, in turn, defines the term "judgment" to "mean[] a judgment, order, or decree entered in a court of this state."

Based on these two statutes, Appellants contend the trial court should have found they had a lien on Gilman's right to the $17,229.27 under the restitution order. Unlike the trial court, we agree their lien could have attached to this money. But because we find remand appropriate to determine whether Respondents had notice of their lien, among other things, we reserve judgment on whether their lien actually entitled them to this amount.

8

A. *Section 708.410 Applied to the Restitution Order*

Our finding that Appellants' lien could have attached to this money readily follows from the statutory text. Taken together, and relevant here, sections 708.410 and 680.230 allow judgment creditors to obtain liens on "[t]he rights of [the] judgment debtor to money or property under any judgment[, order, or decree] subsequently procured in the action or proceeding." Relying on this authority, Appellants (judgment creditors) obtained a lien on the rights of Gilman (a judgment debtor) to "money or property under any judgment[, order, or decree] subsequently procured" in Gilman's suit against the Dalby Respondents. And after they obtained this lien, the trial court issued an order requiring the Dalby Respondents to pay $17,229.27 to Gilman. Under the plain terms of sections 708.410 and 680.230, because Appellants had a lien on Gilman's right to "money or property under *any* judgment[, order, or decree] subsequently procured in the action," they thus had a lien on Gilman's right to the money under the later issued restitution order—though, relevant to our discussion later, that lien would not affect "the rights of a party . . . until the party had notice of the lien." (§ 708.410, subd. (c).)

Consideration of the purposes of section 708.410 et seq. and section 680.230 further supports this conclusion. The purpose of section 708.410 et seq., like the purpose of lien statutes generally, is to secure creditors' rights to money they are owed. (See, e.g., *Oldham v. California Capital Fund, Inc.* (2003) 109 Cal.App.4th 421, 430 ["[o]ne purpose" of § 708.410 et seq. "is to establish and preserve the judgment creditor's priority to the money and property the judgment debtor may receive from the pending action"]; *Nolte v. Smith* (1961) 189 Cal.App.2d 140, 144 [purpose of mechanics liens " 'is to secure to [mechanics] payment for the labor performed or material furnished' "].) And the purpose section 680.230's broad definition of "judgment" is in part to " 'continue[] the effect of former Section 1007' " (*Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125, 144 (*Lucky*)), which provided: " 'Whenever an order for the payment of a sum of money is made by a court pursuant to the provisions of

9

this code, it may be enforced by execution in the same manner as if it were a judgment.' (Code of Civ. Proc., sec. 1007.)" (*Van Cleave v. Bucher* (1889) 79 Cal. 600, 603.)

Both these purposes are furthered in interpreting section 708.410, as modified by section 680.230, to apply to Gilman's right to the money under the restitution order. Interpreting these statutes in this manner furthers section 708.410 et seq.'s purpose of securing the rights of creditors (here, Appellants) to money they are owed. It also furthers section 680.230's purpose of continuing the effect of a former rule that allowed orders to be enforced in the same manner as if they were judgments. And so, consistent with the statutory text, the legislative purpose, and "the well-recognized policy of the law to liberally construe remedial statutes designed to protect persons within their purview" (*Viles v. State* (1967) 66 Cal.2d 24, 32-33), we find Appellants' lien could have attached to Gilman's right to the $17,229.27 under the restitution order. (See also *McClearen v. Superior Court* (1955) 45 Cal.2d 852, 856 [§ 688.1, § 708.410's predecessor, "is remedial in nature and should be liberally construed to give effect to the remedy which it authorizes"].)[3]

The Dalby Respondents, Thiel, and Gilman (collectively, Respondents) offer several arguments in favor of a contrary reading of section 708.410, but we find none of their arguments persuasive.

---

[3]    Some Courts of Appeal have broadly declared that " '[t]hese judgment lien statutes are subject to strict construction because they are purely the creation of the Legislature.' [Citations.]" (*Casa Eva I Homeowners Assn. v. Ani Construction & Tile, Inc.* (2005) 134 Cal.App.4th 771, 778.) But these decisions appear to be focused on the procedural requirements of these statutes, not the scope of the statutes. (See *id.* at pp. 778-779.) To the extent they speak to the scope of these statutes, however, we disagree with them. Again, as the California Supreme Court has often explained—including when considering section 708.410's predecessor, section 688.1—"remedial statutes are to be liberally construed." (*Draper v. City of Los Angeles* (1990) 52 Cal.3d 502, 507; see *McClearen v. Superior Court*, *supra*, 45 Cal.2d at p. 856 [§ 688.1 "is remedial in nature and should be liberally construed to give effect to the remedy which it authorizes"].)

First, they contend we have no "judgment" within the meaning of section 708.410. In their view, the relevant decision is our remittitur and, they suggest, a remittitur is not a "judgment" under the EJL. But Respondents focus on the wrong judicial act. Our earlier reversal of the fee award and our subsequent remittitur were not, themselves, the cause of the restitution award to Gilman. Our reversal, of course, tended to favor restitution. As courts have long recognized, when an individual is obligated by a civil judgment to pay money to the opposing party and that judgment is later reversed, the money should generally be repaid. (*Schubert v. Bates* (1947) 30 Cal.2d 785, 789-790.) But although our reversal favored restitution, it did not require it. The trial court's later restitution order, based on the court's exercise of its inherent power to order restoration, instead required the return of the money and is thus the relevant decision here. (See *id.* at p. 789 [after an appellate court reverses a trial court's order or judgment, the trial court has "inherent" authority "to order restoration"].) And that order was, per the broad definition of "judgment" in section 680.230, a "judgment" for purposes of the EJL.

Second, quoting *Lucky*, *supra*, 185 Cal.App.4th 125, Respondents assert that "[w]hile California's Enforcement of Judgments Law (EJL; § 680.010 et seq.) provides that the word 'judgment' means 'a judgment, order or decree entered in a court of this state' (§ 680.230), litigants do not have license to substitute the word 'order' everywhere the word 'judgment' appears in the EJL, regardless of the circumstances or statutory intent." (*Id.* at pp. 143-144.) But although we accept that applying section 680.230's broad definition could be problematic in some instances, Respondents never explain why that concern is present here.

The court in *Lucky* offered the above statement about section 680.230 when considering the application of section 685.080—which, in relevant part, allows a judgment creditor to claim costs incurred enforcing a judgment but requires the creditor's motion for costs to be "made before the judgment is satisfied in full." (§ 685.080, subd. (a).) In particular, the court considered the following question: If a trial court issues a

11

judgment in favor of a party and later issues several orders adding awards of fees and costs to that judgment, and the indebted party then pays the awarded fees and costs from one of those orders, would you say "the judgment is satisfied in full" with respect to that one order? Or would you say the judgment is satisfied only in part, as there is only one judgment?

You would say the latter, according to the *Lucky* court. (*Lucky*, *supra*, 185 Cal.App.4th at pp. 131-135, 142-143.) It reasoned this conclusion was consistent with the purposes of sections 680.230 and 685.080. According to the court, "[t]he ostensible purpose of the broad definition of 'judgment' in section 680.230 is to permit an order awarding [money] to be enforced under the EJL where there is *no* judgment." (*Lucky,* at p. 144.) But because "there *is* a judgment in the case" that allowed the prevailing party to collect the amounts owed him, the court found, employing that broad definition would not further section 680.230's purpose. (*Lucky,* at p. 144.) Nor, the court added, would it further section 685.080's purpose. "[T]he statutory purpose of requiring that the motion for enforcement costs be brought 'before the judgment is satisfied in full' (§ 685.080, subd. (a)) is to avoid a situation where a judgment debtor has paid off the entirety of what he believes to be his obligation in the entire case, only to be confronted later with a motion for yet more fees." (*Lucky,* at p. 144.) But, the court concluded, "that concern does not arise here," as the judgment debtor had "undisputedly refused to pay [all] amounts" owed under the judgment. (*Ibid.*; see also *Hyundai Motor America v. Superior Court* (2015) 235 Cal.App.4th 418, 425 [reaching a similar conclusion].)

None of that analysis, however, supports Respondents. The *Lucky* court ruled as it did based on the facts of the case and the court's understanding of the purposes of sections 680.230 and 685.080. But considering our facts and the purposes of the relevant statutes here—sections 680.230 and 708.410—we find a different result appropriate. Start with the "ostensible purpose of the broad definition of 'judgment' in section 680.230." (*Lucky*, *supra*, 185 Cal.App.4th at p. 144.) According to the *Lucky* court, that

12

purpose "is to permit an order awarding [money] to be enforced under the EJL where there is *no* judgment." (*Ibid*.) And in *Lucky*, because there *was* a judgment and the prevailing party could seek to obtain all awarded money by enforcing that judgment, there was no need to resort to section 680.230's broad definition of "judgment." (*Lucky,* at p. 144.) But here, in contrast, there was no judgment that directed money to be paid to Gilman; there was only an order. And in the absence of a judgment, under *Lucky*'s logic, employing section 680.230's broad definition of "judgment" would further section 680.230's "ostensible purpose . . . to permit an order awarding [money] to be enforced under the EJL where there is *no* judgment." (*Lucky,* at p. 144.)

Consideration of the purpose of section 708.410 et seq. also supports that conclusion. That statutory scheme's purpose, again, is to secure creditors' rights to money they are owed. (See *Oldham v. California Capital Fund, Inc.*, *supra*, 109 Cal.App.4th at p. 430.) And that purpose, as already discussed, is furthered by holding in favor of Appellants here. Unlike in *Lucky*, then, consideration of the purposes of the relevant statutory provisions does not favor a narrow reading of the term "judgment."

Third, Respondents contend section 708.410 is inapplicable because "there is no prevailing party"; the parties were simply returned to their original position. Respondents, in this argument, appear to believe the purpose behind the order matters. In their apparent view, if the order serves a restitutionary purpose, section 708.410 is inapplicable; but if it instead serves some nonrestitutionary purpose, then perhaps the statute is applicable. But nothing in section 708.410 suggests the purpose of the order matters. Nor does anything in the statute require the money at issue to be the winnings of the prevailing party. Section 708.410, as modified by section 680.230, says a judgment creditor may obtain a lien on the judgment debtor's "rights . . . to money or property under *any* judgment[, order, or decree]" (italics added)—not that the creditor may obtain a lien on the debtor's rights to this money, except when the money serves a restitutionary purpose.

13

Fourth, even supposing Appellants' lien attached to the $17,229.27, the Dalby Respondents and Gilman assert that Appellants sought to enforce their lien too late. They note that Appellants sought to enforce their lien only after Gilman voluntarily dismissed his suit, and, for that reason, contend the trial court lacked jurisdiction to entertain Appellants' enforcement effort. Assuming for now that Gilman had notice of the lien, we disagree. "Numerous cases," to be sure, "categorically state the trial court ' "is without jurisdiction to act further in the action" (citation)' once a voluntary dismissal is filed." (*Basinger v. Rogers & Wells* (1990) 220 Cal.App.3d 16, 21.) But "like most legal principles stated so unequivocally, this one is inaccurate unless qualified." (*Ibid.*) And relevant here, even after a case has been voluntarily dismissed, a trial court retains jurisdiction to vacate the dismissal if unlawfully entered. (See *Ensher v. Ensher, Alexander & Barsoom, Inc.* (1960) 187 Cal.App.2d 407, 410 [plaintiff's voluntary dismissal that failed to comply with special procedural rules requiring the trial court's consent was "ineffectual" and did not deprive the court of jurisdiction].)

Our finding in this regard is guided principally by section 708.440. That statute provides that "no compromise, dismissal, settlement, or satisfaction of the pending action . . . may be entered into by or on behalf of the judgment debtor, without the written consent of the judgment creditor or authorization by order of the court." (§ 708.440, subd. (a).) But to accept the Dalby Respondents and Gilman's view, that limitation on a debtor's ability to dismiss a case is effectively meaningless. After all, judgment debtors could always voluntarily dismiss their cases with judgment creditors finding out only after the fact—at which point, according to the Dalby Respondents and Gilman, it is too late for judgment creditors to do anything. They cannot ask the trial court for relief, because the court now lacks jurisdiction; and they cannot seek review from an appellate court either, because "[a] voluntary dismissal is a ministerial act, not a judicial act, and not appealable." (*H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1365.) We reject this effort to neuter section 708.440. A party who has a notice of

14

a lien and nonetheless attempts to dismiss his or her case in violation of section 708.440's requirements has achieved, at most, an ineffective dismissal. And an ineffective dismissal of a case does not deprive the trial court of jurisdiction. (See *Ensher v. Ensher, Alexander & Barsoom, Inc.*, *supra*, 187 Cal.App.2d at p. 410.)

Fifth, Thiel and Gilman contend Appellants' notice of lien was defective because it failed to state " '[t]he amount required to satisfy the judgment creditor's money judgment at the time the notice of lien [wa]s filed in the action or proceeding.' " (§ 708.420, subd. (e).) But although Appellants declined to state the precise amount necessary to satisfy their liens, they at least said they were owed a minimum of $170,576—which far exceeds the $17,229.27 at stake here. As a result, to the extent Appellants erred in failing to state the exact amount necessary to satisfy their liens, we find this error to be irrelevant and nonprejudicial.

Lastly, the Dalby Respondents assert that they at least should not be liable because "there was no collusion between [them] and [Gilman] to evade a lien." But collusion is not a prerequisite to their being held liable. Per section 708.470, subdivision (c), "[i]f the court determines that a party (other than the judgment debtor) having notice of the lien created under this article has transferred property that was subject to the lien or has paid an amount to the judgment debtor that was subject to the lien, the court shall render judgment against the party in an amount equal to the lesser of the following: [¶] (1) The value of the judgment debtor's interest in the property or the amount paid the judgment debtor[, or] [¶] (2) The amount of the judgment creditor's lien created under this article." Nothing in that language speaks of the need to find collusion before imposing liability. It focuses instead on whether the party "ha[d] notice of the lien"—a topic we turn to next.

B. *Remand Is Appropriate To Consider Whether Respondents Had Notice*

All that said, although we find Appellants' lien could have attached to the $17,229.27, we reserve judgment on whether their lien actually entitled them to this

15

amount. We do so to allow the trial court to decide, in the first instance, whether Respondents had notice of the lien at the time Gilman recovered the $17,229.27.

Section 708.410, subdivision (c) requires judgment creditors to "serve on all parties who, prior thereto, have made an appearance in the action or special proceeding a copy of the notice of lien and a statement of the date when the notice of lien was filed in the action or special proceeding." It adds that "[s]ervice shall be made personally or by mail" and that "the rights of a party are not affected by the lien until the party has notice of the lien."

Although Appellants say they mailed the required notice, all Respondents contend they never received notice of the lien. The Dalby Respondents, for example, acknowledge that Appellants' counsel said he mailed a notice of the lien to them, but they assert that they only received service of the notice after they paid the $17,229.27 to Gilman. In support, they point to the declaration of their attorney, who stated: "It is our policy to scan all mail as it comes in and to then save the mail electronically," but "I was unable to locate any judgment lien in our file. [¶] . . . [¶] . . . If we did receive the lien, in the normal course of business it would have been scanned and placed into our electronic file and it is not there." Thiel, Gilman's attorney at the time, testified similarly. He, like the Dalby Respondents, acknowledged that Appellants' counsel said he mailed a notice of lien to Gilman's previous attorney. But, he declared, he reviewed the file of Gilman's previous attorney and "[t]here was no lien in the file"; "the lien is simply [not in that file], and there is nothing in the file to indicate that there was ever a lien filed on the case." Thiel added that Gilman too had no notice of the lien. "Gilman has advised me that [his former attorney] had never brought the Notice of Liens to his attention."[4]

---

[4] Appellants, in a one-paragraph argument, suggest the trial court should have found at least parts of these two declarations were inadmissible. But they offer no citation to the record and only a generic argument that unidentified portions of one of these

16

So what to make of this evidence?  Appellants' counsel said he mailed copies of the notice of lien to the Dalby Respondents and Gilman's prior counsel.  The Dalby Respondents and Gilman's subsequent counsel, however, contest that claim—or at the least, they contest the idea that they ever received the mailed copies of the notice of lien.  Considering these facts, should we find Respondents had notice of Appellants' lien?  Or should we not?  We need not decide the matter at this time.  Questions of this sort are better left to the trier of fact in the first instance.  As the court in *Bear Creek Master Assn. v. Edwards* (2005) 130 Cal.App.4th 1470 explained, when one party says it mailed a notice, but the opposing party denies receipt, " ' " '[t]he trier of fact must then weigh the denial of receipt against the inference of receipt arising from proof of mailing and decide whether or not the [notice] was received.' " ' [Citation.]" (*Id.* at p. 1486, italics omitted.) But the trier of fact here never weighed the competing evidence.  We thus remand to allow the trial court to consider this issue in the first instance.

Although all parties offer arguments they believe sufficient to warrant a ruling in their favor without the need for a remand, we find none of their arguments persuasive.

Respondents contend the trial court already found it "unclear if Respondent Gilman was aware (e.g., had actual notice) of the lien," and so we should find he lacked the requisite notice.  But whether Gilman's prior counsel had notice of the lien, not whether Gilman was personally aware of the notice, is the more relevant question. Appellants' counsel, again, said he served Gilman's prior counsel with the notice of lien, and ordinarily that should be enough to provide notice to Gilman.  Parties, after all, may generally satisfy notice requirements by serving notice on the opposing party's counsel.

---

declarations contained argument, hearsay, and improper statements about personal knowledge.  To the extent Appellants had any valid argument here, we find it forfeited. (Cal. Rules of Court, rule 8.204 (a)(1)(B)-(C); *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["When an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)

(See § 1010 ["Notices and other papers may be served upon the party or attorney in the manner prescribed in this chapter, when not otherwise provided by this code."]; see also *Freeman v. Superior Court* (1955) 44 Cal.2d 533, 537-538 [courts presume that attorneys communicate what they learn to their clients]; *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 366 [" 'One who acts through an agent will be presumed to know all that the latter learns concerning the transaction, whether it is actually communicated to the principal or not.' "].)

The Dalby Respondents add that they should not be punished for merely obeying the trial court's order requiring them to pay the $17,229.27 to Gilman. We generally agree with that sentiment—parties should not be punished for following court orders. But there are limits to that position. Suppose, for example, a party colludes with a judgment debtor to obtain a court order that improperly deprives the judgment creditor of compensation. We would not, under those circumstances, say the court order offers that party absolute immunity from the judgment creditor's later suit to recover the money. No party, after all, "can take advantage of his own wrong." (Civ. Code, § 3517.) None of this, however, is to say that we find the Dalby Respondents did anything wrong. Our point only is that the merits of the Dalby Respondents' argument here depends on the facts of the case. And because we find remand appropriate for further consideration of the facts—to determine, for example, whether Respondents had timely notice of the lien based on the conflicting evidence—we find this argument better addressed by the trial court in the first instance too.

Lastly, at oral argument, the Dalby Respondents asserted that "it was actually decided by the trial court that proper notice was not given" and, given the absence of a

reporter's transcript in this appeal, we should presume this factual finding is true.**5** We reject the argument. To start, the Dalby Respondents never adequately raised this issue in their briefing. In a portion of their brief discussing the standard of review, they briefly noted that a reviewing court should presume that the trial court's findings are supported by the evidence when no reporter's transcript is provided. (See *Redevelopment Agency v. Gilmore* (1985) 38 Cal.3d 790, 809 ["Since the reporter's transcript of the trial has not been provided, we must presume that the evidence adduced at trial supports the determination that plaintiff's offer was reasonable."]; *In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992 ["an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence"].) But they never went on to explain the relevance of these principles to their arguments—at least, not until oral argument. We find their claim arguably forfeited as a result. (See *Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1116 [rejecting the respondent's argument premised on the absence of a reporter's transcript because it "d[id] not explain how the absence of a reporter's transcript *in this case* makes it impossible to resolve the merits of [the appellant's] challenge to the trial court's ruling"]; see also *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, fn. 6 ["An appellate court is not required to consider any point made for the first time at oral argument, and it will be deemed waived."].)

But even if their claim were not forfeited, we would still reject it. A reviewing court, as mentioned, generally will presume the trial court's findings are supported by the evidence when no reporter's transcript is provided. But that principle offers the Dalby Respondents little help here. The trial court, importantly, did not rule in their favor

---

**5** According to Appellants, the trial court destroyed the reporter's transcript after Appellants' filed their appeal but before the preparation of the appellate record. None of the Respondents disputed this claim.

19

because it found they were unaware of the liens.  It instead ruled in their favor because it concluded that its earlier restitution order was not a "judgment" within the meaning of section 708.410—which presents a pure legal issue that we review de novo even in the absence of a reporter's transcript.  As one court recently explained in a case involving a missing reporter's transcript, "[w]hile a record of the hearing would have been helpful to understand the trial court's reasoning, it is not necessary here where our review is de novo and the appellate record includes the trial court's written orders and all the evidentiary materials germane to [the trial court's decision]."  (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 933.)

Appellants similarly contend we should find in their favor without the need for a remand, but we find their arguments no more persuasive than Respondents' own.  First, they claim the Dalby Respondents' submitted declaration "did not deny receipt" of Appellants' notice of lien, and so we should find that they in fact received the notice of lien.  We read the declaration differently, however.  In it, the Dalby Respondents' attorney said Appellants' lien "would have been scanned and placed into our electronic file" had his firm received it, but "it is not there."  In effect, then, the declarant said his office did not receive the lien.  He might not have used those exact words, but that is the clear import of his words.

Second, Appellants assert that Respondents, even if not notified of the lien by mail, at least had constructive notice of the lien because an electronic version of the lien was available on "the case docket through the lower court's website."  But nothing in section 708.410 suggests that, as long as a court has an electronic case docket where the lien may be found, a judgment creditor can avoid the requirement that notice "be made personally or by mail."  We also question Appellants' claim that a party should know a document is filed in a case, even if not served, because the document is available on the court's website.  Under that same logic, Appellants could be charged with knowing that Gilman filed a motion for a return of the $17,229.27 because, presumably, a copy of that

20

motion was available on the court's website—which would tend to show that Appellants forfeited their objections by failing to timely raise them. In any event, even if this type of argument could have merit in some cases, we decline to find that Appellants' lien was available online at the time Gilman sought restitution, as Appellants offer no facts to show that to be true. The only "evidence" they offer in support is a portion of their motion for sanctions where they argued "[t]he court file contained [Appellants'] notice of liens." But statements in motions are not evidence. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11 ["unsworn statements of counsel are not evidence"].) And regardless, whether the court's file contained the notice and whether the court's website contained the notice are two very different things.

Next, and similarly, Appellants contend Respondents had constructive notice of the lien because the proof of service for one of the trial court's minute orders, which was issued before Gilman sought restitution, "showed that Appellants' counsel . . . had been added to the service list." In Appellants' view, any "reasonably prudent person" would have noticed the addition of this "stranger to the case," investigated, and then discovered Appellants' filed notice of lien. The Dalby Respondents counter that actual notice, not constructive notice, is required under section 708.410. But either way, we reject Appellants' claim. We decline to fault Respondents for failing to thoroughly inspect every one of the court's proofs of service for potential clues. Although Respondents perhaps could have discovered the lien in this fashion, we decline to find they should have done so.

Finally, in their reply brief, Appellants assert that Gilman "had actual knowledge of the liens because his attorneys in [a different case] represented they had read the notice of liens in October 2009." But because Appellants raise this argument for the first time in their reply brief, without good cause, we will not consider it. (See *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.) Appellants, however, can certainly raise this issue on remand.

# III

## *Appellants' Motion for Sanctions*

We consider next Appellants' argument that the trial court wrongly denied their motion for sanctions.

Appellants contend Gilman and Thiel should have known Gilman was not entitled to the $17,229.27 based on Appellants' filed notice of lien, and they thus should be sanctioned for nonetheless filing a motion to recover this amount and later dismissing the case. Appellants ground their claim on section 128.7, subdivisions (b)(1) and (c). Subdivision (b)(1) of that statute provides: "By presenting to the court[] . . . [a] written notice of motion, or other similar paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . [¶] [i]t is not being presented primarily for an improper purpose. . . ." And subdivision (c) adds: "If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may[] . . . impose an appropriate sanction."

The trial court, however, rejected Appellants' request for sanctions. Starting with Gilman's restitution motion, the court found Gilman did not "present[] the restitution motion for any improper purpose given he was simply seeking a return of money he had to pay [the Dalby Respondents] pursuant to an attorneys' fees award that had been reversed." And considering next Gilman's dismissal of the case, the court found that too was not filed for an improper purpose, reasoning that Appellants' lien did not even attach to the $17,229.27 and, in any event, neither Gilman nor Thiel knew of the lien. Appellants now appeal that ruling, objecting that the court relied on its mistaken ruling on Appellants' motion for lien satisfaction and wrongly relied on a subjective, rather than an objective, standard in considering whether sanctions were appropriate.

We agree with Appellants in part. To start, however, we limit our review to the claims Appellants made at the trial level. They argued then that Gilman should be

sanctioned for filing (while an unrepresented party) his restitution motion, and Thiel (who Gilman later retained) should be sanctioned for afterward dismissing the case. But Appellants now contend Gilman and Thiel should also be sanctioned for later opposing Appellants' motion to vacate the dismissal of the case. We decline, however, to consider the merits of this new claim. " 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal.' " (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.)

Having addressed the scope of the issues, we now turn to the court's finding that Gilman's filing of the restitution motion was not in itself sanctionable conduct. The court, again, declined to sanction Gilman because it found "he was simply seeking a return of" the $17,229.27 that he was lawfully entitled to receive. But that ruling was premised on the court's conclusion that Appellants had no right to this money. Because we find remand necessary to allow the court to reconsider whether Appellants had a right to the $17,229.27, we find remand necessary on this related ruling too.

We turn next to the court's finding that Thiel's dismissal of the case was not sanctionable. Appellants contend the court wrongly focused on the "subjective good faith" of Thiel and its decision not to impose sanctions should thus be reversed. But even assuming the court erred in that regard, because we find Appellants have presented no ground for finding Thiel filed the dismissal "primarily for an improper purpose" (§ 128.7, subd. (b)(1)), we nonetheless decline to reverse this part of the court's decision. (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [" 'a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason' "].)

Appellants contend sanctions are warranted here because Thiel, although having notice of the lien, failed to obtain Appellants' consent or the court's authorization before dismissing Gilman's suit. (§ 708.440, subd. (a) [no . . . dismissal . . . may be entered into by or on behalf of the judgment debtor, without the written consent of the judgment

23

creditor or authorization by order of the court"].)  But even supposing Thiel had notice of the lien (which is questionable, see part II.B. of the Discussion above), his mere failure to abide by the proper procedures for dismissal is not reason enough for finding sanctions warranted.  To find sanctions appropriate, Appellants needed to show Thiel filed the dismissal "primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" (§ 128.7, subd. (b)(1))—not merely that Thiel's filing was procedurally flawed.  But rather than attempt to show Thiel filed the dismissal "primarily for an improper purpose," they instead suggest it is enough that the dismissal was an "improper filing."  That, however, is not the standard for imposing sanctions under section 128.7, and we thus decline to find the trial court erred in denying their request for sanctions against Thiel.[6]

IV

*The Dalby Respondents' Motion to Tax Costs*

Finally, we consider Appellants' objection to the court's order denying the Dalby Respondents' motion to tax costs.

The Dalby Respondents filed their motion to tax costs in response to one of Appellants' memorandum of costs seeking payment for the costs of enforcement.  The Dalby Respondents asserted, among other things, that Appellants were not entitled to their requested costs because they were not the prevailing parties.  The trial court, however, ultimately denied the motion in light of Appellants' concession they had neither the intention nor the right to impose the costs claimed on the Dalby Respondents.  But

---

[6]     Thiel also raises one additional argument for rejecting Appellants' claims against him:  Appellants' claims against him reflect an "extortive scheme."  That is so, he reasons, because Appellants threatened to report him to the State Bar unless his client paid them their money.  Appellants, in response, assert that Thiel's argument about extortion is itself "attempted extortion."  Because we find Appellants' claims against Thiel fail for other reasons, however, we need not consider these competing claims of extortion.

24

although purporting to deny the motion, the court nonetheless added "that no fees or costs shall be awarded against the [Dalby Respondents]"—in effect largely granting the Dalby Respondents their requested relief.

Appellants now object to the court's order for three reasons, first focusing on the court's statement "that no fees or costs shall be awarded against the [Dalby Respondents]." According to Appellants, this language wrongly prevents Gilman from obtaining costs from the Dalby Respondents; and because "[a]nything that enriches Gilman increases the potential for judgment satisfaction," this language also aggrieves Appellants. But the court's order had nothing to do with Gilman's ability to obtain costs from the Dalby Respondents. It dealt only with Appellants' ability to recover their costs from the Dalby Respondents and, with respect to that issue alone, said "no fees or costs shall be awarded against the [Dalby Respondents]."

Appellants next attempt to retract their concession they had neither the intention nor the right to impose the costs claimed on the Dalby Respondents. At the trial level, Appellants asked the court in their motion to "order [their] post-judgment enforcement costs . . . be paid by GILMAN"—not by the Dalby Respondents or anyone else, but by Gilman only. In a separate declaration, their counsel again explained that Appellants did not seek to recover these costs "against anybody but Mr. Gilman." And Appellants later, in response to the Dalby Respondents' motion to tax costs, once more conceded they "ha[d] no claim against [the Dalby Respondents] for enforcement costs." But now, having reconsidered the matter after reviewing new and old case law, Appellants contend the trial court should have found the Dalby Respondents liable for the costs of enforcement—even though they explicitly told the trial court repeatedly that they were not seeking costs from the Dalby Respondents. And to support this new claim, Appellants offer a questionable gloss on the facts. Although once finding the Dalby Respondents to be "well-respected attorneys who had nothing to gain by paying the wrong party," and saying their payment to Gilman "likely reflect[ed] nothing more than

25

inadvertence," Appellants now—without any evidentiary support—claim the Dalby Respondents had some sort of deal with Gilman and "aided and abetted a fraudulent transfer by Gilman." We reject this belated effort to expand the scope of responsible parties. (See *In re Estate of Westerman* (1968) 68 Cal.2d 267, 279 [although often a matter of discretion, reviewing courts ordinarily will not consider issues raised for the first time on appeal].)

Finally, Appellants contend the trial court should have "announced Gilman waived his rights to challenge" Appellants' requests for costs and stated that Gilman could not represent himself while Thiel was listed as his counsel of record. But we fail to see why the court needed to announce these things when it denied the Dalby Respondents' motion to tax costs. The court's decision there had little to do with Gilman and noted only that it was not considering two documents that Gilman had lodged with the court. Because Appellants offer no clear explanation on why the court needed to say anything more about Gilman in this order, we reject their requests.[7]

---

[7] Before closing, we find it necessary to comment on Appellants' counsel's disparaging remarks about the trial court, opposing counsel, and opposing parties. Appellants' counsel, for example, suggested one argument by the Dalby Respondents' counsel would make sense only if they were "Stupid Lawyers." He called Gilman "nothing but a scofflaw." And he called the trial court "naive" and in need of "school[ing]." These disparaging comments are unhelpful and unprofessional. Counsel should refrain from this conduct going forward.

## DISPOSITION

We reverse the trial court's denial of Appellants' motion "for order of satisfaction of lien."  We also reverse the trial court's denial of Appellants' motion for sanctions against Gilman.  In all other respects, we affirm.  Thiel is entitled to recover his costs on appeal from Appellants, and the remaining parties are to bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　BLEASE, Acting P. J.

We concur:

　　　　/s/
HULL, J.

　　　　/s/
KRAUSE, J.

27